NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 06-CV-103-JBC

AZMI R. HAKIM                                                                                          PETITIONER

VS:              **MEMORANDUM OPINION AND ORDER**

WARDEN JOE W. BOOKER, JR., ET AL.                                            RESPONDENTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Azmi R. Hakim, who is incarcerated at the United States Penitentiary-McCreary ("USP-McCreary) in Pine Knot, Kentucky, has submitted both a *pro se* civil rights complaint pursuant to 28 U.S.C. § 1331 and petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. This court has construed them together as constituting a habeas proceeding, as the petitioner is challenging his conviction in a prison disciplinary proceeding and is seeking the reinstatement of good conduct time which had been forfeited as a sanction for the infraction. He has paid the habeas filing fee.

The matter is before the court for screening.[1] 28 U.S.C. § 2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). For the reasons to be discussed below, the instant petition

---

[1] As this is a *pro se* petition, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. § 1915(e)(2), the district court can dismiss a case at any time if it determines the action is frivolous or malicious or fails to state a claim upon which relief can be granted.

will be denied.

## DEFENDANTS

As respondents/defendants, the petitioner has named USP-McCreary's Warden Joe W. Booker, Jr., Lt. R. Dunn, and Jeremy Thomas; additionally, he names the Federal Bureau of Prisons ("BOP") Regional Director Kim M. White and National Officer Harrel Watts.

## CLAIMS

The petitioner claims that his loss of good conduct time ("GCT") credits (1) happened without any protection of his due process rights; (2) is retaliatory and discriminatory; (3) constitutes an Eight Amendment violation; and (4) amounts to the torts of harassment and false imprisonment.

## FACTUAL ALLEGATIONS

The following is a summary or construction of the petitioner's factual allegations, as made in the initiating petition, accompanying complaint, or documents which he attaches as exhibits.

The petitioner states that he is an Israeli citizen and he has been subjected to staff members' harassment from July 7, 2004, to June 25, 2005, with the result that he was deprived of 40 days of GCT, which he seeks to have restored. As to the specifics, he alleges that he was confined in USP-McCreary's Segregated Housing Unit, for reasons which he does not explain, when he was falsely charged with a prison infraction on January 17, 2005. A Correctional Officer named Thompson wrote an incident report of that date describing Hakim's rejection of his supper tray, the prisoner-plaintiff insisting that instead of that tray, he wanted the lunch tray which he had missed while away from his cell on a

2

visit. The petitioner purportedly "threw his food tray out the cell through the food slot striking my left thigh. He said go get the Fucking Lieutenant." Exhibit [hereinafter "Ex"] C. The officer charged the petitioner with assault, a Code 224 offense.[2]

On February 1, 2005, a hearing on the assault charge was held before a BOP Disciplinary Hearing Officer ("DHO"). The attached DHO report, dated May 5, 2005, and delivered to the petitioner the next day, states that at the hearing the petitioner denied committing the offense, testifying that he doesn't use the "f" word and that at the time of the incident he was not even angry. Ex. A. When he refused the meal, he merely stated to the officer and the orderly that he "wanted my chicken lunch. I pushed it to the side and told him I don't want it. They never answered me." Hakim also contended that he was fired for having an argument with an officer who must have been a friend of Officer Thompson. In addition to his own testimony, the petitioner called three witnesses and expressed his wish to see photographs of the scene but was told that none were taken because the orderlies had cleaned up the mess.

The petitioner was found guilty as charged and was sanctioned with 15 days in disciplinary segregation and disallowance of 27 days of good conduct time ("GCT"). He immediately appealed the matter through the BOP procedures, Administrative Remedy No.

---

[2] BOP Program Statement 5270.07 and 28 C.F.R. § 541.13, at Table 3, set out four levels of offense severity, Prohibited Acts and Disciplinary Severity Scale, and also set out the range of permissible penalties, any of which may be imposed alone or with other sanctions on a prisoner who is found guilty of violating any listed prison offense. One of the authorized sanctions is the loss of a prisoner's GCT, the amount of time to be forfeited dependent upon the severity of the offense. In the Code 100 series, Greatest Severity Category, the offenses include Codes 100, killing, and 102, assault, for which the prisoner may be penalized with the loss of 27-41 days of his GCT; the Code 200 series, the High Category, covers stealing, Code 219, and assault as 224, the offense with which the plaintiff was charged, and contains GCT loss of 14-27 days as a permissible penalty for offenses listed thereunder; the Code 300 series is designated Moderate and authorizes 1-14 days GCT loss upon a finding of guilty of any offense numbered in the 300's; and the lowest category, Low Moderate, covers Code 402, malingering, and other lower offenses, and the loss of GCT therefor is limited to 1-7 days.

3

373248, claiming that he had been charged with false allegations and convicted without sufficient evidence. The documents exchanged in the appeal process show that he followed that process to exhaustion. In his appeal to the national level, written in July of 2005, the petitioner wrote the following version of his allegations:

> It's nearly impossible to aim anything through the slot to hit a target. Officer Thompson was standing on the left, I pushed my tray through the slot and it fell on the right side. Officer Thompson tell the orderly to clean it up, then called the L.T. to the scene. There was no food stains or any trace of assault physically on this body or cloths [sic], there was many witnesses [but the DHO limited him to calling only two] . . . . [D]espite there [sic] testimony and no evidence, I was still found guilty. C.O. Thompson dislike [sic] me since the first day he came to the SHU! I have falsely been accused of a serious charge and I ask you kindly to please review all the evidence in this case again . . . .

Ex. K. At every level of appeal, the BOP officials found that there had been substantial compliance with Program Statement 5270.07, *Inmate Discipline and Special Housing Units*; the greater weight of the evidence supported the DHO's decision; and the sanctions imposed were appropriate for the offense and in compliance with policy. Ex. M.

While the petitioner's appeals were proceeding, Hakim initiated additional complaints of staff harassment toward him. In Administrative Remedy No. 368864, begun on February 6, 2005, five days after the disciplinary hearing on the assault charge, he complained of harassment and discrimination at the hands of SHU Correctional Officers Thompson and Puckett. Exhibits D - G. In No. 378351, begun in May of 2005, three weeks after the complained-of DHO Report finding him guilty of the assault, the petitioner claimed that correctional officers were harassing him by waking him up to terrorize him and searching his cell without just cause. Ex. G-H.

It appears from the exhibits bearing these second and third numbers that the petitioner's claims were initially rejected as unsubstantiated, but he pursued the matter further to some extent. However, Petitioner Hakim neither alleges nor demonstrates that either of these grievances reached the national level, so as to be exhausted with the BOP. Perhaps there were other disciplinary proceedings involved and further documentation that would explain the discrepancy between his seeking the restoration of 40 days of GCT, whereas his specific claims presented in Remedy No. 373248 involved the taking of only 27 days. Currently, the discrepancy is unexplained.

## DISCUSSION

Federal prisoners are required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241. *See Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam); *Hardwick v. Ault*, 517 F.2d 295, 296 (5th Cir. 1975) ("[T]he federal courts have imposed upon federal prisoners the requirement that they `exhaust their administrative remedies in accordance with Bureau of Prisons policy . . . .'"). Moreover, exhaustion of administrative remedies should be implemented to prepare a record. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980).

The administrative remedies available to inmates confined in BOP institutions are set out in the Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-.19 (1998). Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a

request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden. *See* § 542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel. *See* § 542.15 (a) - (b).

To the extent that the petitioner wishes to make claims of harassment and/or discrimination in the events complained of in Administrative Remedy Nos. 368864 and 378351, he has not demonstrated exhaustion of these claims administratively. Therefore, he cannot yet bring such claims. Only Administrative Remedy No. 373248 has been shown to be exhausted, *i.e.*, the disciplinary proceeding on the petitioner's alleged tray-throwing of January 17, 2005. Accordingly, the court may address the petitioner's federal claims with regard to his conviction for assault and the loss of 27 days of GCT, not the total 40 days for which there is no documentation as to the facts involved or claims exhausted.

First, the court construes Hakim's due process claim to be that he was denied procedural due process. The due process required by the U.S. Constitution for prisoners facing disciplinary action has been delineated by the Supreme Court of the United States in a few well-known opinions which guide this court. The Court has explained that when a prisoner is faced with the loss of good-conduct time or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," only then is he entitled to certain due process protections. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Therefore, the instant petitioner having been charged with an offense for which he

6

could, and did, lose GCT, he was entitled to certain minimal due process protections, which include (1) a 24-hour written notice of the charge; (2) a qualified right to call witnesses; and (3) a written statement by the fact-finders as to the evidence relied on and reasons for the disposition, all as set out in *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974).

Exhibits in this record demonstrate that proceedings against the instant petitioner met all of these requirements. The incident report shows that Hakim received notice of the charges against him the day after the incident. Additionally, the attached DHO Report chronicles the hearing in detail. It shows that Hakim made no complaint of the procedures at the time, including his present claim that his difficulty with the English language was rendering him unable to understand the charges or defend himself. Moreover, at the hearing, he was permitted to call witnesses; and he presented three fellow inmates: one testifying unhelpfully; one giving supporting testimony that the petitioner was calm in pushing the tray "out the right side," as he "asked for his lunch tray"; and the third inmate being dismissed from the hearing for refusing to answer any questions.

Importantly, Petitioner Hakim was provided a written statement by the fact-finder as to the evidence relied on and reasons for the disposition. Ex. A at 2-4. After setting out the evidence before him, the DHO made a finding of guilty as charged, grounding his decision on the lack of credibility of Hakim and his one supporting witness, whom he flatly describes as being a liar about both the events and his location for viewing them. The DHO deemed it appropriate to give greater credibility to the written statements of the staff members and supporting documentation than to the accused and one other inmate, who may or may not have witnessed the events. Therefore, "having considered all relevant evidence, the DHO finds that the greater weight of the evidence supports the finding that

you committed the prohibited acts [sic] of Assault, Code 224." As to the sanction, the DHO justified the penalty as being "to let you know that you, and you alone will be held responsible for your behavior at all times. . . . [and to] prompt you to modify your behavior and to deter you and others from committing a similar act in the future."

In prison disciplinary proceedings, due process requires that a prisoner's good conduct time, whereby the prisoner may achieve early release, cannot be forfeited unless there is "some evidence" of his guilt. *Superintendent v. Hill*, 472 U.S. 445-56 (1985).

> Assuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55. Thus, a review such as this does not involve a redetermination of an inmate's innocence or guilt. A court merely ensures that the disciplinary decision is not arbitrary and does have evidentiary support. *Id*. at 457.

The petitioner's claims failed in the disciplinary proceeding and they must fail here, as there is "some evidence" that he was guilty of the events charged. In contrast to the petitioner's blanket denial of cursing and throwing the tray and his inmate witness's concurrence, the DHO had conflicting evidence which he sets out. In addition to Thompson's January 17th incident report, the DHO also had a separate memorandum from Thompson regarding both the incident and his firing of Hakim from his food service job on January 4th; a memorandum from the Lieutenant who was on duty and was summoned to the scene on January 17th; negative medical assessments of both Officer Thompson and

Petitioner Hakim; and the explanation that staff could not take photographs of the mess because the orderlies stated that they had cleaned it up.

Because the court has found "some evidence" to support the DHO's decision that the petitioner did throw his tray at the officer and that it hit the officer, there is no further due process inquiry. An independent assessment of witnesses' credibility is not required. *Superintendent*, 472 U.S. at 455. Moreover, the credibility determinations of the hearing officers cannot be disturbed on appeal. *See Wagner v. Seely, et al.*, 915 F.2d 1575, 1576 (7th Cir. 1990) (unpublished), *cert. denied* 501 U.S. 1219 (1991). Having considered the matter and having found that there was sufficient evidence that the petitioner was guilty of the assault, the court finds that Hakim is not entitled to the relief he seeks on due process grounds.

The petitioner also fails to state an equal protection claim under the Fifth Amendment. Again he makes only a broad assertion, *i.e.*, that he was a victim of discrimination based on his being from a foreign land and having poor skills in English. Again, however, he fails to provide any supporting facts. Equal protection requires that "all persons similarly circumstanced shall be treated alike." *Reed v. Reed*, 404 U.S. 71, 76 (1971) (quoting *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). The equal protection clause prohibits discrimination by the government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently without any rational basis for the difference. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

However, a prisoner cannot make out a violation of his equal protection rights

"simply by showing that other inmates were treated differently." *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993). He must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Id.* (citing *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988)). No such showing having been made, no cognizable equal protection claim has been stated. *Id.* See also *Robinson v. Hastings*, 2006 WL 950185 (E.D. Ky. 2006) (slip op.) (citing *Radvansky* and *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993)). The petitioner's equal protection claim is without a basis, and an equal protection claim which is not supported by factual allegations should be dismissed as conclusory. *See Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971).

Plaintiff Hakim also claims that Officer Thompson made false statements and falsely imprisoned him. However, these are state torts and would not warrant the relief sought in habeas, even if the court exercised jurisdiction over these claims. The court does have discretion as to whether to entertain pendent jurisdiction over state claims filed in connection with and arising out of the same facts as § 1983 actions, but this is not a civil action pursuant to § 1983 or § 1331. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which the court has original jurisdiction). Nor could it yet be a civil rights action, so long as the disciplinary conviction has not been invalidated. *Heck v. Humphrey*, 512 U.S. 477 (1994); *Edwards v. Balisok,* 520 U.S. 641 (1997); *Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir.2003).

Finally, Petitioner Hakim has made an Eighth Amendment claim. However, punishment of a convicted criminal must be "barbarous" or contravene society's "evolving standards of decency" to constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). Prison officials are prohibited from punishing in a manner involving the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (citing *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. at 346). Eighth Amendment cruel and unusual punishment involves only "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.

The instant petitioner's pleadings contain no such allegations regarding the conditions of his confinement. Additionally, the court finds that the petitioner has also failed to state an Eighth Amendment claim of disproportionate punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *United States v. Organek*, 65 F.3d 60-63 (6th Cir. 1995) (citing cases).

## CONCLUSION

Accordingly, the court being advised, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and judgment shall be entered contemporaneously with this memorandum opinion and order in favor of the respondents.

Signed on October 17, 2006

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

12